United States District Court
Southern District of Texas
**ENTERED**
November 18, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RAQUEL VEGA MARTINEZ d/b/a AIRLINE INSURANCE and HUGO VEGA, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § § | CIVIL ACTION NO. H-22-2767 |
| CAPITAL ONE, N.A., | § § | |
| Defendant. | § § | |

**MEMORANDUM OPINION AND ORDER**

Raquel Vega Martinez ("Martinez") d/b/a Airline Insurance ("Airline") and Hugo Vega (collectively, "Plaintiffs") filed this action in the District Court of Harris County, Texas, against Capital One, N.A. ("Defendant").[1] Pending before the court is Defendant Capital One, N.A.'s Motion to Dismiss Under Rule 12(b)(6) ("Defendant's Motion to Dismiss" or "Defendant's MTD") (Docket Entry No. 5). For the reasons stated below, Defendant's Motion to Dismiss will be granted in part and denied in part.

I. **Factual Allegations and Procedural Background**

Martinez is the sole proprietor of Airline Insurance, an independent insurance agency and multi service company in

---

[1] Plaintiffs' Original Petition and Application for Temporary Restraining Order ("Complaint"), Exhibit 2 to Petition for Removal, Docket Entry No. 1-2, p. 2. For purposes of identification all page numbers reference the pagination imprinted at the top of the page by the court's Electronic Case Filing ("ECF") system.

Harris County, Texas.[2] Airline previously had four locations in Houston and eight employees.[3] Martinez opened a business account with Defendant in 2019.[4] Martinez "applied for and received a PPP loan on behalf of Airline Insurance from Customers Bank in the amount of $7,292.00."[5] The funds were dispersed to Martinez's business account with Defendant.[6] "Airline Insurance used the funds for approved purposes under the CARES Act by using loan proceeds on payroll costs and other eligible expenses, related to payroll within her business."[7] "Customers Bank forgave the PPP loan on October 8, 2021."[8]

"On or about October 8, 2021 [Martinez] was made aware that her business account was frozen by [Defendant] when business transactions began to be declined."[9] Defendant informed Martinez that it had frozen her Airline Insurance business account and her other accounts and that it would close all of her accounts "due to an 'unauthorized PPP loan.'"[10] "Plaintiff informed Defendants that

---

[2] Id. at 3.

[3] Id.

[4] Id.

[5] Id.

[6] Id.

[7] Id. at 3-4.

[8] Id. at 4.

[9] Id.

[10] Id.

they were incorrect and demanded that the assets of Airline Insurance remain available to her but, Capital One refused to do so."[11] Defendant required documentation that Martinez "had employees and proof that Airline Insurance was in operation."[12] Martinez complied.[13] She "made countless calls to [Defendant]," but each time "she is told that she will need to send her documents to prove existence of her business and employees and wait for the review of said documents."[14] Martinez "has sent the documents as instructed and each time she follows up, [she] is told that the documents were not received or that they are in the process of reviewing the documents."[15] Defendant "has failed to provide any explanation for their actions and every inquiry into the matter has revealed no results to their investigations."[16] "Finally in January 2022 [Martinez] sent a demand for the release of the funds which were frozen and notice of Deceptive Trade Practices."[17] "Defendant[] did not respond."[18]

---

[11] Id.

[12] Id.

[13] Id.

[14] Id. at 5.

[15] Id.

[16] Id.

[17] Id.

[18] Id.

Defendant has continued to withdraw a monthly maintenance charge from Martinez's frozen account.[19] Airline Insurance collects insurance premiums from insureds on behalf of other insurance companies.[20] Those insurance companies continued to attempt to collect the premiums that had been paid to Airline, but the account freeze prevented these transactions.[21] Defendant charged the account $30 for each of these returned transactions for a total of $510.[22] One insurance company terminated its relationship with Airline because Airline could not pay them the premiums.[23]

Airline also offers an auto title processing service. It "collects the cost of title, tax, registration and license plates from the client, . . . prepare[s] the documents on behalf of the client and a runner will go to the Harris County Tax Office and process the title change for a fee."[24] Some title clients' funds were in the frozen account, and "a total of (6) six checks [were] returned to the Harris County Tax Office for title services that the business had conducted."[25] "The Harris County Assessor-Collector sent a 10 day demand" for the title funds plus returned

---

[19] Id.

[20] Id. at 6.

[21] Id.

[22] Id.

[23] Id.

[24] Id. at 7.

[25] Id.

check fees, a total of $4,988.55. The Harris County Tax Office also threatened criminal action against Plaintiffs, and Airline risked "losing [its] license to conduct business as a title service in Harris County."[26]

The company providing payroll services to Airline was unable to debit the frozen bank account and therefore blocked access to Airline's payroll account.[27] Plaintiffs lost "access to employee hours, withholding totals, employee insurance and 401k contributions required to be made by Airline."[28]

Defendant continued to accept deposits, automatic commissions, and credit card payments by clients into the frozen account.[29] "The total sum of Merchant processed credit card payments collected by Defendant and held was ($18,870.44)."[30] It was two weeks before Plaintiffs had new accounts at other banks ready "to accept credit for commissions and payment credits which had normally gone to [Defendant]."[31] Plaintiffs also shared a joint personal checking account kept by Defendant, which was frozen along with the Airline business account.[32] "In or around March 2022 [Defendant] closed the

---

[26] Id.

[27] Id.

[28] Id.

[29] Id. at 8.

[30] Id.

[31] Id.

[32] Id. at 3-4.

Plaintiffs' personal joint checking account and mailed Plaintiff a check for the funds that remained in the account."[33]

Airline was delayed in doing payroll, "became delinquent in rental payments," and "closed one location and laid off 4 employees."[34] "The actions of [Defendant] effectively soured several business relationships, clients began to call the office and appear in person, demanding their money back and accusing the business publicly of theft."[35] "At least one valuable employee resigned after reporting being pressured by her family that she might be blamed for the transactions she processed for clients. Another staff member resigned after the stress of the clients calling and leveling accusations of theft and threatening staff over refunds for title transactions coupled with delays in payroll."[36] "Though the Plaintiffs were eventually able to pay the Harris County Tax Assessor and the insurance companies, they now retain 4 employees and operate 2 locations."[37] Plaintiffs "were forced to rent out their home and are currently staying in the guest room of a friend so that they were able to recover from the financial setback [Defendant] caused."[38] "The Plaintiffs primary

---

[33] Id. at 9.

[34] Id. at 7, 9.

[35] Id. at 8.

[36] Id.

[37] Id. at 9.

[38] Id. at 9-10.

residence was nearly defaulted on the loan and the mortgage company which holds the loan on a rental property is still threatening foreclosure."[39] Martinez's credit score has also been lowered because of Defendant's actions.[40]

"In or around April of 2022, Plaintiff received a bank statement for Airline Insurance showing that on March 25, 2022 there was a check paid for the amount of $7,292.00, when Plaintiff called Capital One she was told that no information can be given to her and she was transferred to the fraud department. Capital One fraud reported that they could not give any information on who authorized the check but that someone would contact Plaintiff by phone and no more information could be given."[41] "Plaintiff did not draw any check or authorize for any check to be paid from the Airline Insurance business account improperly frozen by [Defendant]."[42]

On July 21, 2022, Plaintiffs filed this action in the District Court of Harris County, Texas, against Defendant.[43] Plaintiffs allege conversion, breach of fiduciary duty, breach of warranty, unconscionable acts, defamation, negligence, and violations of the

---

[39] Id. at 10.

[40] Id.

[41] Id. at 13-14.

[42] Id. at 14.

[43] Id. at 2, 33.

Texas Deceptive Trade Practices Act ("DTPA").[44] "Plaintiff[s] seek[] award for the damages to their good name, and further damages for the income Plaintiffs would have received had they not been forced to close one of their locations."[45] Plaintiffs also seek temporary restraining orders, temporary injunctions, a restoration order, interest, damages under the DTPA, and attorney's fees and costs.[46]

On August 15, 2022, Defendant removed the action to this court based on diversity jurisdiction.[47] On October 12, 2022, Defendant filed its Motion to Dismiss.[48] On October 20, 2022, Plaintiffs filed Plaintiff's Response to Defendant Capital One, N.A.'s Motion to Dismiss Under Rule 12(b)(6) ("Plaintiffs' Response") (Docket Entry No. 6).[49]

## II. Legal Standard

### A. Rule 12(b)(6)

A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim."

---

[44] Id. at 14-18.

[45] Id. at 17.

[46] Id. at 17, 20.

[47] Petition for Removal, Docket Entry No. 1, pp. 1, 6.

[48] Defendant's MTD, Docket Entry No. 5, p. 1.

[49] Plaintiffs' Response, Docket Entry No. 6, p. 1.

Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom. Cloud v. United States, 122 S. Ct. 2665 (2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). The court generally is not to look beyond the pleadings in deciding a motion to dismiss. Spivey v. Robertson, 197 F.3d 772, 774 (5th Cir. 1999).

### III. Application

#### A. Conversion

The Complaint alleges that Defendant "by its actions of unlawfully freezing the personal account of Plaintiffs and the business account for Airline Insurance have deprived Plaintiffs of rightful ownership interest in their bank accounts, thus depriving Plaintiffs of their property and their conduct has caused the Plaintiffs to suffer harm, financially and to their reputation and good name."[50] Defendant argues that Plaintiff cannot state a valid claim for conversion because a depositor generally cannot assert a claim of conversion for the depositor's assets held by the bank.[51] Plaintiff responds that "Defendants are guilty or using false,

---

[50]Complaint, Exhibit 2 to Petition for Removal, Docket Entry No. 1-2, p. 14.

[51]Defendant's MTD, Docket Entry No. 5, pp. 10-11.

misleading and deceptive acts of practice, for no good cause," that Defendant never gave "a truthful or valid defense, or explanation," and that "Defendants have intentionally and objectively gained control of Plaintiff's accounts."[52]

"Money may be the subject of an action for conversion if the fund can be described or identified as a specific chattel." First National Bank of Bellaire v. Hubbs, 566 S.W.2d 375, 377 (Tex. Civ. App.—Houston [1st Dist.] 1978). "Ordinarily, a general deposit of money with a bank creates a creditor-debtor relationship between the depositor and the bank." Hodge v. Northern Trust Bank of Texas, N.A., 54 S.W.3d 518, 522 (Tex. App. 2001) (citing Bandy v. First State Bank, Overton, Texas, 839 S.W.2d 609, 618 n.4 (Tex. 1992)). A conversion claim therefore generally exists only where the funds are a "special deposit," meaning "the bank keeps or transmits identical property or funds entrusted to it." Id. The person claiming that funds are special deposits bears the burden of showing that the parties agreed to such an arrangement. See Citizens National Bank of Dallas v. Hill, 505 S.W.2d 246, 248 (Tex. 1974).

Plaintiff has not alleged that any of her funds were special deposits or alleged any facts to that effect. Therefore the presumption that the parties had a debtor-creditor relationship precludes Plaintiff from bringing a conversion action to recover

---

[52]Plaintiff's Response, Docket Entry No. 6, p. 3 ¶ 8.

the deposited funds. First National Bank of Bellaire, 566 S.W.2d at 377; see also E-Dealer Direct v. Bank of America, N.A., EP-21-CV-62-DB, 2021 WL 2115299, at *4 (W.D. Tex. May 25, 2021) (holding that bank's freezing plaintiff's general deposit account could not be conversion).

**B.   Breach of Fiduciary Duty**

Plaintiff next alleges that Defendant's actions breached its fiduciary duty to Plaintiffs.[53] Defendant argues that it does not owe Plaintiff a fiduciary duty under Texas law.[54] Plaintiff disagrees, citing a few cases and the Texas Business and Commerce Code.[55]

None of Plaintiffs' cited authority states that a bank normally owes its depositor a fiduciary duty. To the contrary, "[t]he relationship between a bank and its customer does not usually create a fiduciary relationship." Wells Fargo Bank, N.A. v. Citizens Bank of Texas, N.A., 181 S.W.3d 790, 801 (Tex. App.—Waco 2005); Wil-Roye Investment Co. II v. Washington Mutual Bank, FA, 142 S.W.3d 393, 410 (Tex. App.—El Paso 2004). Where courts have found that a bank-customer relationship created a fiduciary duty, they have relied on "extraneous facts and conduct,

---

[53]Complaint, Exhibit 2 to Petition for Removal, Docket Entry No. 1-2, p. 15.

[54]Defendant's MTD, Docket Entry No. 5, pp. 11-13.

[55]Plaintiffs' Response, Docket Entry No. 6, p. 5 ¶ 19, p. 6 ¶ 22.

such as excessive lender control over, or influence in, the borrower's business activities." Davis v. West, 317 S.W.3d 301, 312 (Tex. App.—Houston 2009).

Plaintiffs' cited authority does not state that a bank owes a fiduciary duty to its depositor. See Tex. Bus. & Com. Code § 1.203 (merely imposing a duty of good faith); Hartford Casualty Insurance Co. v. Walker County Agency, Inc., 808 S.W.2d 681, 687-88 (Tex. App.—Corpus Christi 1991) (discussing fiduciary duty in principal-agent relationships). Plaintiff also cites no "extraneous facts and conduct" indicating that their dealings with Defendant go beyond an ordinary bank-customer relationship. Davis, 317 S.W.3d at 312. For these reasons, Plaintiffs' claim for a breach of fiduciary duty fails as a matter of law.

C. **Breach of Warranty**

The Complaint then alleges three "breaches" under the heading "Breach of Warranty:" "Defendants are guilty of breaching their Express Warranty by actions which are improper and unauthorized. Defendants are guilty of breaching their Merchantable duty, by use of actions which are not performed as the Defendant so marketed. Defendants are guilty [of] breaching their Duty of Fitness, by failing to provide service or resolution as their employees or agents insured they would."[56]

---

[56]Complaint, Exhibit 2 to Petition for Removal, Docket Entry No. 1-2, p. 16.

Plaintiffs cite no authority and provide no explanation how Defendant's alleged conduct satisfies the elements of any of these claims. Plaintiffs do not cite any express warranty or marketing statement made by Defendant. Plaintiffs' Response does not resolve these defects. For these reasons, Plaintiffs' claims for "Breach of Warranty" fail as a matter of law.

D.  **Unconscionable Acts**

The Complaint then alleges that "[t]he Defendants are guilty of taking advantage of Plaintiffs' who are consumers, lack of knowledge, ability, experience, or capacity to a grossly unfair degree."[57] The court construes this as a claim under Tex. Bus. & Com. Code § 17.50(a)(3), as the court is aware of no other "unconscionable acts" claim under Texas law. Section 17.45(5) defines an "Unconscionable action or course of action" as one that "takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." The Complaint recites this definition but fails to explain what knowledge or experience Plaintiffs lacked and how Defendant's actions took advantage of Plaintiffs. Defendant's Motion to Dismiss will therefore be granted as to Plaintiffs' "unconscionable acts" claim.

E.  **Defamation and Business Disparagement**

The Complaint alleges that Defendant defamed Plaintiffs. Defendants argue that "Plaintiffs' defamation claim fails because

---

[57] Id.

(1) there was no publication' and (2) if Plaintiffs contend they were damaged due to negative credit reporting, these claims are preempted by the Fair Credit Reporting Act."[58] Plaintiffs respond that Defendant returned Plaintiffs' checks to their clients unpaid and labeled them "NSF."[59] Plaintiffs argue several other theories of defamation, including that Defendant defamed Plaintiffs by locking their accounts, that Defendant defamed Plaintiffs "by the process of foreclosure, which Plaintiff is currently undergoing by Defendant's refusal to return Plaintiff's funds," and that Plaintiffs were defamed by having to file this lawsuit.[60]

Under Texas law, "[d]efamation's elements include (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases." In re Lipsky, 460 S.W.3d 579, 593 (Tex. 2015). "'Publication' occurs if the defamatory statements are communicated orally, in writing, or in print to some third person who is 'capable of understanding their defamatory import and in such a way that the third person did so understand.'" Exxon Mobil Corp. v. Rincones, 520 S.W.3d 572, 579 (Tex. 2017). "[A] statement is defamatory if it tends to injure a person's reputation and thereby expose the person to public hatred,

---

[58]Defendant's MTD, Docket Entry No. 5, p. 15.

[59]Plaintiffs' Response, Docket Entry No. 6, p. 17 ¶ 61.

[60]Id. at 11 ¶¶ 37-38, 40.

contempt, ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation." Texas Disposal Systems Landfill, Inc. v. Waste Management Holdings, Inc., 219 S.W.3d 563, 580 (Tex. App.—Austin 2007). When the defamed person is a private individual, the requisite degree of fault is negligence as to the statement's falsity. In re Lipsky, 460 S.W.3d at 593.

Texas also recognizes the similar tort of business disparagement, which "applies to derogatory publications about the plaintiff's economic or commercial interests." See In re Lipsky, 460 S.W.3d at 591. The elements of business disparagement are "that (1) the defendant published false and disparaging information about [the plaintiff's business], (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff." Id. at 592. A statement is published with malice if the defendant knew of its falsity. See Hurlbut v. Gulf Atlantic Life Insurance Co., 749 S.W.2d 762, 766 (Tex. 1987). The third element, lack of privilege, means that a defendant can assert privilege as an affirmative defense, not that the plaintiff must negate it. See Cisco Systems, Inc. v. Mushkin, Inc., Civil Action No. 3:20-CV-2588-K, 2021 WL 3550515, at *9 (N.D. Tex. Aug. 11, 2021) (citing Burbage v. Burbage, 447 S.W.3d 249, 254 (Tex. 2014)). The special damages element requires that plaintiff establish "pecuniary loss that has been realized or liquidated as in the case of specific lost sales." Id. at *10.

A bank can commit business disparagement by bouncing a payor's checks while falsely telling the payee that the payor had insufficient funds to cover the check. See F.D.I.C. v. Perry Brothers, Inc., 854 F. Supp. 1248, 1274 (E.D. Tex. 1994), vacated on other grounds, Nationsbank v. Perry Brothers, Inc., 68 F.3d 466, 1995 WL 581536 (5th Cir. 1995). In F.D.I.C. the court found that a defendant "returned unpaid ('bounced') approximately $130,000 in checks drawn on [the plaintiff's] checking accounts." Id. at 1258. The defendant told the payees that the plaintiff "had 'insufficient funds' in its checking accounts . . . to cover the checks." Id. But "at the time these checks were presented to [the defendant], [the plaintiff's] accounts contained sufficient funds." Id. The court held that the plaintiff had "established its business disparagement claim against" the defendant. Id. at 1274. On appeal, the Fifth Circuit remanded the case for further findings regarding causation and damages, but the Fifth Circuit affirmed the finding that the "dishonored checks" were business disparagement. Nationsbank, 68 F.3d 466, at *2.

Plaintiffs' defamation claim is insufficiently pled in the Complaint. The Complaint does not identify any statements published by Defendant to a third party. But Plaintiffs' Response provides facts that may support a legally cognizable claim for defamation, business disparagement, or both based on the "NSF" checks. Plaintiffs state that Defendant "published and printed NSF on the checks they returned unpaid to the Harris County Tax

assessor."[61] Plaintiffs also state that Defendant "returned all checks NSF" after the account freeze.[62] Taking as true that the checks bounced because of the freeze and not because of the account's balance, these allegations resemble the bank's statements in F.D.I.C. Plaintiffs' Response alleges damages caused by the NSF checks, stating that "Plaintiff was subject to prosecution for issuing bad checks" and that Plaintiffs lost business relationships with insurance clients as well as the Harris County Tax Assessor, all due to the NSF checks.[63] For these reasons, the facts stated in Plaintiffs' Response may support a defamation or business disparagement claim. But these allegations are scattered throughout Plaintiffs' Response, and the Complaint does not adequately plead these claims. "Generally, a district court errs in dismissing a complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend." Naglich v. Applied Optoelectronics, 436 F. Supp. 3d 954, 980 (S.D. Tex. 2020). Dismissing the complaint is appropriate when "a complaint alleges the plaintiff's best case." Id. Given Plaintiffs' potential defamation and business disparagement claims, the court is not persuaded that the Complaint alleges Plaintiffs'

---

[61] Plaintiffs' Response, Docket Entry No. 6, p. 17 ¶ 61. The court understands "NSF" to stand for "insufficient funds," but Plaintiffs should make that explicit.

[62] Id. at 8 ¶ 29.

[63] Id.

best case. The court will therefore allow Plaintiffs to file an amended complaint by December 2, 2022. The amended complaint should allege facts supporting the elements of their business disparagement and defamation claims and explain how those facts support each element of the claims.

Plaintiffs also allege that they were defamed because (1) they were locked out of the account, (2) the account freeze led to foreclosure proceedings, and (3) Plaintiffs had to file this lawsuit. These allegations fail to state a defamation or business disparagement claim because they do not identify any statement published by Defendant to a third party. See In re Lipsky, 460 S.W.3d at 593.

### F.  Negligence

Plaintiffs appear to allege a negligence claim. However, Plaintiffs' Complaint and Response cite no authority and fail to explain how the factual allegations satisfy the elements of a negligence claim. Defendant's Motion to Dismiss will therefore be granted as to Plaintiffs' negligence claim.

### G.  DTPA Claims

The Complaint includes a list of alleged DTPA violations. Tex. Bus. & Com. Code § 17.46(b) lists many types of "false, misleading, or deceptive acts or practices." Section 17.50(a) permits a consumer to bring a claim for an act specifically

enumerated in § 17.46(b) if the act was "relied on by a consumer to the consumer's detriment."

The Complaint fails to plead these DTPA claims with any particularity. Instead, Plaintiffs merely list portions of the DTPA that they claim Defendants violated. Plaintiffs' Response gives slightly more explanation of a few of the DTPA claims. But the only mention of the detrimental reliance requirement is Plaintiffs' bare assertion that they relied to their detriment. Defendant's Motion to Dismiss will therefore be granted as to Plaintiffs' DTPA claims.

## IV. Conclusion and Order

For the reasons explained above, the court concludes that Plaintiffs have failed to state a claim upon which relief can be granted. However, Plaintiffs' Response articulates a potentially cognizable defamation or business disparagement claim. Defendant Capital One, N.A.'s Motion to Dismiss Under Rule 12(b)(6) (Docket Entry No. 5) is therefore **GRANTED** as to Plaintiffs' conversion, breach of fiduciary duty, breach of warranty, unconscionable acts, negligence, and DTPA claims; and is **GRANTED IN PART** as to Plaintiffs' defamation claim.

The court views this case as appropriate for mediation. Accordingly, if the parties are unable to settle the case by December 16, 2022, they shall provide the court with the name,

address, email address, and telephone and facsimile numbers of an agreed upon mediator or request a settlement conference before the magistrate judge.

**SIGNED** at Houston, Texas, on this 18th day of November, 2022.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE